UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GEORGE B. DEDUAL, III | CIVIL ACTION |
| VERSUS | NO. 10-2874 |
| UNITED STATES POSTAL SERVICE, ET AL | SECTION "C" (2) |

ORDER AND REASONS

This matter comes before the Court on motion for summary judgment filed by the defendant, Patrick R. Donahoe, Postmaster General, United States Postal Service. Rec. Doc. 21. Having considered the record, the memoranda of counsel and the law, the Court has determined that summary judgment is appropriate for the following reasons.

The plaintiff, George B. DeDual, III ("DeDual"), is a white male who is proceeding *pro se*. He is a former employee of the United States Postal Service ("USPS") in Bogalusa, Louisiana. His employment began on June 26, 2004, and ended on in April 2008, when he was terminated for falsifying his employment application. He claims that this action was discriminatory and retaliatory based on his gender and in comparison to the treatment given his female co-worker, Tonya Cothern ("Cothern").[1]

---

[1] DeDual is not pursuing a discrimination claim based on race.

Rec. Docs. 1, 33.

It is undisputed that DeDual was arrested in November 2006 for shoplifting at Home Depot in Picayune, Mississippi.  Rec. Doc. 21-12.  The USPS Office of Inspector General ("OIG") investigated that arrest, and during an interview with OIG agent Chris J. Nugent ("Nugent") in January 2007, the plaintiff admitted to the arrest and the existence of those charges. According to Nugent, DeDual also admitted to other arrests, including one for shoplifting at another Home Depot in 2003.  Rec. Doc. 21-11, Exh. C.  DeDual stated that he plead "no contest" to that earlier shoplifting charge, but could not recall if he disclosed that charge on his application with the USPS.  A report was issued by OIG in February 2007.  Rec. Doc. 21-12, Exh. C-1.

It is also undisputed that in June 2007, DeDual plead not guilty to an indictment charging him with one count of shoplifting and one count of grand larceny pertaining to the November 2006 arrest.  Rec. Doc. 21-13.  OIG issued another report on DeDual in September 2007, and his immediate supervisor, Dorothy Maye ("Maye") interviewed DeDual and a union representative on September 20, 2007, at which time DeDual admitted he had been indicted for charges related to that arrest.  Rec. Docs. 21-2, Exh. A; 21-13, Exh. C-2.  Maye subsequently issued an indefinite suspension on October 12,

2007.  Rec. Doc. 21-4, Exh. A-1.  DeDual plead guilty to grand larceny on October 10, 2007.  Rec. Doc. 21-4, Exh. A-2.  Thereafter, Maye attempted to interview DeDual about the guilty plea and on November 24, 2007, Maye issued a notice of removal, effective December 14, 2007, pertaining to the 2006 arrest and charges.  Rec. Doc. 21-5, Exh. A-3.  Carl J. LeBouef ("LeBouef"), Maye's immediate supervisor, concurred with her decision.  Rec. Doc. 21-7, Exh. B.  DeDual's subsequent union grievance was resolved in his favor and the suspension and removal were withdrawn on February 14, 2008.  Rec. Docs. 21-2, Exh. A, 25-4.

On February 20, 2008, another OIG report on DeDual was issued pertaining to the false statement on his application with the USPS and on February 25, 2008, he was issued a second notice of removal, effective April 4, 2008, for unacceptable conduct.  Rec. Docs. 21-6, Exh. A-4, 21-14.  This action was based on DeDual's previous arrest on December 6, 2003, and the resulting charges for theft and possession of stolen things.  Rec. Doc. 21-6, Exh. A-4.  That arrest and those charges preceded the date on which he answered  "no" to Question 7a on the USPS application pertaining to the existence of

previous convictions and current charges.[2] Rec. Doc. 21-9, Exh. B-2. His union grievance over this second notice of removal was denied and his employment was terminated. Rec. Doc. 21-10, Exh. B-3.

In this motion, the defendant argues that the plaintiff can not establish a prima facie case of sex discrimination , alternatively, that he can not establish that the defendant's proffered reasons were pretextual with regard to his claim of sex discrimination or, with regard to his claim of retaliation, that "but for" his previous protected activity he would not have been removed for falsifying his employment application. DeDual's claims and opposition appear to be largely based on his comparison to the treatment afforded Cothern, who was arrested on January 6, 2006, for

---

[2]That question reads as follows:
Have you ever been convicted of a crime or are you now under charges for any offense against the Law? You may omit: (1) any charges that were dismissed or resulted in acquittal; (2) any conviction that has been set aside, vacated, annulled, expunged, or sealed; (3) any offense that was finally adjudicated in a juvenile court or juvenile delinquency proceeding; and (4) any charges that resulted only in an conviction of a non-criminal offense. All felony and misdemeanor convictions and all convictions in state and federal courts are criminal convictions and must be disclosed. Disclosure of such convictions is required even if you did not spend any time in jail and/or were not required to pay a fine.

charges that included drug and gun charges.[3]  Rec. Doc. 25.  Cothern plead not guilty in August 2006, and received a favorable performance evaluation from her supervisor in November 2007 for presentation to the district attorney in conjunction with those charges.  Although Cothern previously received a 14-day suspension for absence without official leave for time spent in jail in January 2006, she was not issued an indefinite suspension after her arrest.  Rec. Doc. 25.   After DeDual's termination, Cothern plead guilty to possession of illegal drugs in April 2008, and was also issued a letter of removal on May 30, 2008.  Rec. Doc. 21-7, Exh. B.  According to DeDual, Cothern's union grievance was also sustained.  Rec. Doc. 25-4.

**Discrimination**

Title VII of the Civil Rights Act of 1964 ("Title VII") provides that it "shall be unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

---

[3] Much of the evidence that is provided by the plaintiff is in a form that does not comply with the requirements of Fed. R. Civ. P. 56.  Because he is not represented by counsel, the Court has attempted a broad reading and interpretation of the plaintiff's opposition.

such individual's race, color, sex, or national origin . . ." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (citing 42 U.S.C. § 2000e-2(a)). In *McDonnell Douglas*, the Supreme Court established a burden shifting framework to analyze Title VII discriminatory treatment cases that can only be proven by circumstantial evidence. 411 U.S. at 802. First, the plaintiff must make a prima facie case by demonstrating that: (1) he was a member of a protected class, (2) he was qualified for her position, (3) he was subjected to adverse employment action, and (4) similarly situated employees not in his protected class were treated more favorably in like circumstances. *McDonnell Douglas*, 411 U.S. at 802; *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004). If the plaintiff establishes his prima facie case, the burden then shifts to the employer to put-forth legitimate, non-discriminatory reasons for its actions. *McDonnell Douglas*, 411 U.S. at 802. Upon doing so, the burden then shifts back to the plaintiff to show that the employer's legitimate reasons were just pretext for discrimination. *Id.*

Here, the plaintiff can not carry his burden of proof as to fourth element, that similarly situated employees not in his protected class were treated more favorably. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). In disparate treatment cases, the plaintiff-employee must show "nearly identical

circumstances" for employees to be considered similarly situated. *Berguist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007). With regard to the investigation, discipline and indefinite suspension imposed as to DeDual after his 2006 arrest, the Court finds that the "reasonable cause" underlying DeDual's indictment does sufficiently distinguish DeDual's case from Cothern's for purposes of the fourth factor, and otherwise provides the defendant with a legitimate, non-discriminatory reason for the suspension that is not pretextual. Both DeDual and Cothern received notices of removal after conviction and, later, favorable results with their union grievances. With regard to the 2003 false statement and subsequent discipline and termination, the Court finds that the plaintiff makes no showing that any female employee who lied as to previous arrests on the USPS application was treated differently than he was.

**Retaliation**

Title VII also makes it unlawful for an employer to retaliate against an employee who opposes an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). The burden shifting framework provided by *McDonnell Douglas* to analyze discrimination cases also applies to Title VII unlawful retaliation cases. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). To make a prima facie case of

7

retaliation under Title VII, a plaintiff must show: (1) that the plaintiff engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). Summary judgment is appropriate if the plaintiff cannot support all three elements. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

An employee has engaged in an activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C.A. § 2000e-3(a). Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Although informal complaints may constitute protected activity, not all abstract grumblings or vague impressions of discontent are actionable as complaints. *Hagan v. Echostar Satellite*, 529 F.3d 617, 626-27 (5th Cir. 2008). An adverse employment action is one that would dissuade a reasonable worker from making or supporting a charge of

discrimination.  *Burlington N. & Sante Fe Ry. Co v. White*, 548 U.S. 53, 68 (2006).  "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment action."  *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

The plaintiff does not demonstrate a causal link between the protected activity underlying the union grievance pertaining to the 2006 criminal charges and conviction and either the first notice of removal, indefinite suspensions or the ultimate termination based on the false statement contained on the USPS application.  In fact, DeDual does not deny that he made the false statement on that application.  Instead of focusing on the substance of the false statement, he focuses on the various dates on the application initialed by the plaintiff, which actually appear to falsely confirm the answer given in 7a on those various dates.  Rec. Doc. 25-3.  The last action as to those charges was May 26, 2004, with the designation "closed – not dismissed.  Rec. Doc. 21-14.  DeDual admits to first being interviewed in September 2003, prior to June 26, 2005, which latter date he believes "was the only date I could legally be held to."  Rec. Doc. 25-2.  The dates directly attendant to Question 7a are April 6, 2004, and May 6, 2004, and no issue exists that the plaintiff answered the question in the negative and provided those dates with

9

his initials. Rec. Docs. 21-14, 25-2. Despite the confusion surrounding the multiple dates, the plaintiff's argument is not material to the issue of falsehood presented, or the fact that Maye relied on the second OIG report and not DeDual's gender or previous complaint of sex discrimination in making her decision to issue the second notice of removal.

The plaintiff bears the ultimate burden of proving his claims and has failed to meet his burden with regard to a claim of sex discrimination or retaliation. DeDual fails to show that he was treated less favorably than female employees, that the defendant's reasons for its actions with regard to the 2006 arrest and indictment were not legitimate, non-discriminatory or pretextual, or that his termination was retaliatory or otherwise not based on his false statement on his employment application. Instead, the undisputed facts indicate that DeDual received materially similar treatment as Cothern with regard to the arrests and charges while employed, and that the plaintiff was terminated for making a false statement on his employment application, not because of retaliation.

The plaintiff is reminded that this is not a union proceeding, but a Court of law based on evidence, and that, in the end, he bears the burden of proving his case with

competent evidence. It is true that Ms. Cothern is female and the plaintiff is male. That alone is insufficient under the law to survive summary judgment as to claims of sex discrimination or retaliation.

Accordingly,

IT IS ORDERED that the motion for summary judgment filed by the defendant, Patrick R. Donahoe, Postmaster General, United States Postal Service is GRANTED. Rec. Doc. 21.

New Orleans, Louisiana, this 29th day of February, 2012.

HELEN G. BERRIGAN
UNITED STATES DISTRICT COURT